698 So.2d 811 (1997)
Daniel Lynn OVERBEY, Petitioner,
v.
Janet Carol Hutching OVERBEY, etc., Respondent.
No. 88370.
Supreme Court of Florida.
June 5, 1997.
Rehearing Denied September 2, 1997.
Daniel L. Overbey, South Bend, IN, pro se.
Lawrence J. Nixon, Daytona Beach, for Petitioner.
*812 Richard J. D'Amico, Daytona Beach, for Respondent.
OVERTON, Justice.
We have for review Overbey v. Overbey, 674 So.2d 898 (Fla. 5th DCA 1996), in which the Fifth District Court of Appeal held that the voluntary decision by a non-custodial parent to attend law school, with a consequent significant loss of income, did not constitute a valid basis for a downward modification of child support. The district court certified that its decision was in conflict with Milligan v. Addison, 582 So.2d 769 (Fla. 3d DCA 1991). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
For the reasons expressed, we find that a downward modification of child support for education enhancement should be ordered only if the modification is found to be in the best interests of the child or children. Under the unrefuted facts in this record, we find that the requested modification is not in the best interests of the children. We therefore approve the result reached by the district court.
The facts of this case are as follows. Janet Overbey (the mother) and Daniel Overbey (the father) were divorced in 1990. Pursuant to the marital settlement agreement that was incorporated into the judgment of dissolution, the father was to pay child support for the parties' two minor children in the amount of $200 per week. As of 1994, the father's income as a police officer was approximately $45,000 per year and the mother's income as a practical nurse was approximately $24,000 per year. In 1995, the father was accepted to law school and applied for a reduction in child support to enable him to attend. The mother opposed the motion, contending that the father's voluntary decision to attend law school did not constitute a significant change of circumstances justifying a reduction in child support. The trial court granted the motion and reduced the child support to $233.72 per month (the amount was to be further reduced once the oldest child, who was sixteen at the time of the modification, reached majority).
In a two-to-one decision, the Fifth District Court of Appeal found that the father's decision to attend law school was a voluntary one that could not take precedence over the welfare of the two minor children, particularly since one child would reach majority before the father finished school. The court noted that law school attendance was not a logical extension of the father's career as a police officer and was not contemplated until after the dissolution.
In reaching its decision, the district court concluded that the district courts were split on this issue and certified conflict with Milligan. In Milligan, the district court summarily concluded that a payor's loss in income due to a decision to attend law school for three years should not be considered a voluntary reduction in income sufficient to impute income for child support purposes. In so holding, the district found that the reduction was justified because it would ultimately benefit the payor's child. In reaching its decision, the district court relied on Arce v. Arce, 566 So.2d 1308 (Fla. 3d DCA 1990), which discussed this issue in detail. In Arce, the court concluded as follows:
We hold that a spouse who suffers a temporary reduction in income to complete his education has not voluntarily reduced his income. A spouse who demonstrates his good faith and whose conduct is reasonably calculated to ensure the future economic well-being of the persons to whom he owes a duty of support may be temporarily excused from having attributed to him the income which he is capable of earning, but which he is currently not earning. Such an approach is particularly appropriate here where, throughout the marriage, the husband was pursuing his medical education and now, while completing that education, is making a heroic effort to meet his support obligations. While working towards his fellowship, he is working extra shifts and has met all of his child support obligations and 65% of his alimony obligations.
Our opinion should not be read to excuse a spouse from making support payments, but merely to allow a trial court the discretion to fashion a schedule *813 of payments that will take into account the needs of the family and the current ability of the husband to pay, allowing for future actions for modification once the spouse has realized the higher earning capacity. In exercising that discretion, the trial court must determine whether the spouse has acted in good faith and whether the temporary reduction in income is part of a course of conduct reasonably designed to ensure the future economic security of the family.
566 So.2d at 1311-12 (footnotes omitted). See also Ledbetter v. Bell, 658 So.2d 1146 (Fla. 4th DCA 1995)(following Arce, reduction is voluntary if result of good faith, reasonable, and calculated to benefit all parties).
On the other hand, in State Department of Revenue v. Thomas, 659 So.2d 1305 (Fla. 1st DCA 1995), the First District held that voluntarily and unilaterally taking oneself out of the full-time work force to pursue one's education constitutes an insufficient justification to warrant a downward modification in child support. See also Wollschlager v. Veal, 601 So.2d 274 (Fla. 1st DCA 1992) (unilateral decision to pursue higher education cannot excuse parent from child support payment obligations).
Several statutory provisions must be examined to adequately evaluate and resolve the issue presented by these cases. Section 61.14(1), Florida Statutes (1995), governs "[e]nforcement and modification of support, maintenance, or alimony agreements or orders." That section provides in pertinent part as follows:

[W]hen a party is required by court order to make any [support, maintenance, or alimony] payments, and the circumstances of or the financial ability of either party changes ... either party may apply ... for an order decreasing or increasing the amount of support, maintenance, or alimony, and the court has jurisdiction to make orders as equity requires, with due regard to the changed circumstances or the financial ability of the parties or the child, decreasing, increasing, or confirming the amount of separate support, maintenance, or alimony provided for in the ... order.
(Emphasis added.) Section 61.13, Florida Statutes (1995), which governs the power of courts to issue orders regarding child support, additionally provides:
(1)(a) In a proceeding for dissolution of marriage, the court may at any time order either or both parents who owe a duty of support to a child to pay support in accordance with the guidelines in s. 61.30. The court initially entering an order requiring one or both parents to make child support payments shall have continuing jurisdiction after the entry of the initial order to modify the amount and terms and conditions of the child support payments when the modification is found necessary by the court in the best interests of the child, when the child reaches majority, or when there is a substantial change in the circumstances of the parties. The court initially entering a child support order shall also have continuing jurisdiction to require the obligee to report to the court on terms prescribed by the court regarding the disposition of the child support payments.
(Emphasis added.)
Generally, under these provisions, a fundamental prerequisite to bringing an action to modify child support payments is a showing of substantial change of circumstances. Chastain v. Chastain, 73 So.2d 66 (Fla.1954) (analysis in the context of alimony rather than child support); Deatherage v. Deatherage, 395 So.2d 1169 (Fla. 5th DCA 1981); Brown v. Brown, 315 So.2d 15 (Fla. 3d DCA 1975). However, under section 61.13(1)(a), a court that initially entered an order requiring a parent to pay child support has jurisdiction to modify the amount of that support under three circumstances: (1) when the modification is necessary for the best interests of the child; (2) when the modification is necessary because the child has reached majority; or (3) when there is a substantial change in the circumstances of the parties. Lacy v. Lacy, 413 So.2d 472 (Fla. 2d DCA 1982); Wood v. Wood, 272 So.2d 14 (Fla. 3d DCA 1973).
The burden of establishing that a reduction is necessary is on the party seeking modification. Deatherage. Moreover, *814 when, as in the instant case, the child support was based on an agreement by the parties that was subsequently incorporated into an order, a heavier burden rests on the party seeking a reduction than would otherwise be required. Tietig v. Boggs, 602 So.2d 1250 (Fla.1992).
In Lacy, the district court concluded that parties who, as in the instant case, entered into a support agreement could not seek modification under the "best interests" prong. The court first concluded that under section 61.13 a trial court does not "initially" enter an order requiring child support payments if the parties themselves execute a property settlement agreement that is subsequently incorporated into the order. The court then determined that modification of agreements is governed solely by section 61.14, which allows for a modification only if there has been a substantial change in circumstances. We disagree with this interpretation of the statutes. First, the court cited no support for the initial conclusion, and we find no basis in the statute for this holding. Second, both sections 61.13 and 61.14 on their face govern the modification of orders. Thus, we conclude that sections 61.13 and 61.14 must be read in pari materia. In sum, we find that the incorporation of a settlement agreement into a final judgment ordering support is irrelevant in determining whether a court initially ordered support for purposes of bringing an action under sections 61.13 and 61.14. Consequently, we disapprove Lacy to the extent it holds to the contrary. As previously indicated, however, the incorporation of a settlement agreement is relevant to the burden of proof necessary to establish that a reduction is warranted. Tietig.
In this case, as well as in the cases cited for conflict, the district court decisions turned on whether the reduction in child support was "voluntary." This is because courts interpreting the meaning of the term "substantial change of circumstances" have found that such a change in circumstances must be significant, material, involuntary, and permanent in nature to warrant a reduction in payments. Chastain; Tietig, 602 So.2d at 1251 (McDonald, J., concurring); Deatherage; In re Marriage of Johnson, 352 So.2d 140 (Fla. 1st DCA 1977). These requirements have developed in part to ensure that the duty to furnish adequate support is not deliberately avoided. Under this rule, even if a payor parent experiences a reduction in income or net worth, a request for a reduction in child support payments may be denied if that parent has the ability to provide the necessary support. See, e.g., Hayden v. Hayden, 662 So.2d 713 (Fla. 4th DCA 1995). To that end, section 61.30, Florida Statutes (1995), which sets forth guidelines to be followed in establishing the amount of child support that must be paid, provides:
Income shall be imputed to an unemployed or underemployed parent when such [unemployment] or underemployment is found to be voluntary on that parent's part, absent physical or mental incapacity or other circumstances over which the parent has no control.

Id. § 61.30(2)(b)(emphasis added).
As noted, Florida district courts evaluating cases where a reduction in income is due to a payor parent's decision to return to school are divided as to whether such a reduction (1) constitutes a voluntary reduction in income for purposes of imputing income or (2) constitutes an involuntary temporary reduction of income that is reasonably calculated to ensure the future economic well-being of the recipients. However, the issue of whether a decision to return to school is "voluntary" has created a significant amount of confusion because, clearly, under the circumstances of each of the cases discussed earlier in this opinion, the decision to leave employment to attend school was a voluntary one over which the payor parent had control. Under the circumstances at issue, we find that the question should not be whether the reduction is voluntary; instead, the focus should be on whether the temporary reduction will be in the best interests of the recipients. Section 61.13(1)(a) contemplates the distinction between the best interests and voluntary change of circumstances methods for evaluating a reduction in child support by providing that a court may enter an order modifying child support payments when the modification is found to be necessary in the *815 best interests of the child or when there is a substantial change of circumstances.
Having concluded that, under the circumstances of this case, the father's reduction in income is voluntary and consequently insufficient to support a finding of substantial change in circumstances, we must evaluate whether the reduction is in the best interests of the children. This is not an easy issue. Today, we live in a changing economy that often requires new or enhanced skills to ensure that individuals may continue to earn wages at a commensurate or increased level. Courts cannot address this issue in a vacuum. Among other things, the need for retraining when a skill is no longer needed and the need for increased education to enhance income are two very important factors that may need to be considered.
At the time this action was brought, the minor children were ten and sixteen years of age. The income of the father as a police officer was approximately $45,000 per year. The trial judge reduced the child support payments from approximately $200 per week to $200 per month to allow the father to attend law school. In so holding, the trial judge found that "the minor children will ultimately benefit from the former husband's actions, even though the older child will reach the age of majority while her father is attending law school." We are unable to agree with this conclusion. As noted by the trial judge, the older child will reach majority before the father finishes school; the younger child only a few years thereafter. Thus, the legal duty of the father to support the children will completely terminate soon after he finishes school. Grapin v. Grapin, 450 So.2d 853 (Fla.1984) (absent finding of dependency, any duty to support child who has reached majority is moral rather than legal one). Additionally, there is no guarantee that the father will secure employment paying more than $45,000 per year immediately after he finishes school. Under these circumstances, we cannot conclude with any certainty that the father's reduction in income and respective reduction in child support would act to ensure the present and future economic well-being of the children. In fact, the children would be subsidizing the father's law school education through lower child support payments despite having no assurances of any future benefit. Given the undisputed facts in this record, we must find that the trial judge abused her discretion in concluding that the children would eventually benefit from the proposed reduction in child support payments. From our view, while there may possibly be some voluntary long-term benefit, there clearly would be no legally enforceable benefit.
In reaching our decision, we must emphasize that we are in no way promulgating a bright-line rule to be applied in these cases. In light of today's fast-paced changing age of technology, trial judges will to have to evaluate, on a case-by-case basis, whether a temporary reduction in child support payments due to a payor's pursuit of an enhanced education will eventually be legally beneficial to the recipients. To illustrate, while we find that the court in Arce erred in finding the reduction to be involuntary, we fully agree with the court's conclusion that, under the circumstances in that case, the temporary reduction in child support was appropriate.
Accordingly, for the reasons expressed, we disapprove the reasoning of the district court's opinion in this case but we approve the result reached by the district court. We also disapprove the opinions in Arce, Milligan, Ledbetter, Thomas, and Wollschlager to the extent they rely on a voluntary/involuntary rather than best interests analysis to justify or deny a requested reduction in child support payments.
It is so ordered.
SHAW, GRIMES and WELLS, JJ., concur.
HARDING, J., concurs in part and dissents in part with an opinion, in which KOGAN, C.J., and ANSTEAD, J., concur.
HARDING, Justice, concurring in part and dissenting in part.
While I agree with the majority's conclusion that section 61.13(1)(a) contemplates a distinction between the best interests of the child and a voluntary change in the parties' circumstances when a court evaluates a request for a reduction in child support, majority *816 op. at 814, I respectfully dissent from the majority's determination that the trial judge in the instant case abused her discretion in concluding that the children would eventually benefit from the proposed reduction in child support payments. Majority op. at 815.
As this Court explained in Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla.1980), trial judges have discretionary power to make such determinations in domestic relation proceedings because only the trial judges "can personally observe the participants and events of the trial." In reviewing a true discretionary act, the appellate court must recognize this superior vantage point of the trial judge and apply the "reasonableness" test to determine whether the judge has abused that discretion. Id. at 1203. If reasonable people could differ as to propriety of the judge's action, then the action is not unreasonable and there can be no finding of an abuse of discretion. Id. The discretionary ruling of a trial judge should be disturbed only when the decision fails to satisfy this reasonableness test. Id.
The majority opinion acknowledges that "trial judges will have to evaluate, on a case-by-case basis, whether a temporary reduction in child support payments due to a payor's pursuit of an enhanced education will eventually be legally beneficial to the recipients." Majority op. at 815. This is the type of discretionary ruling that should only be disturbed if it fails the test of reasonableness. The trial judge was in the best position to evaluate the testimony and evidence presented to her in the instant case. In my judgment, the trial judge covered all the bases and considered everything that she was supposed to consider in arriving at her conclusion. Even if I might have come to a different conclusion, I cannot say as a matter of law that the judge's ruling was unreasonable. Thus, I find no abuse of discretion and would approve the judge's determination in this case.
KOGAN, C.J. and ANSTEAD, J., concur.