ROTHENBERG, J.
(dissenting).
The defendants, Rogelio Vargas, et al. (collectively, “the Vargases”), appeal from an order overruling exceptions and ratifying the general magistrate’s report and recommendation. Based on the following, I would reverse and remand. I, therefore, respectfully dissent from the majority opinion.
The Vargases have lived in their home since 1971, over forty years. On July 28, 2006, they borrowed $282,000 from First Financial Services, LLC, and executed a mortgage and note securing the payment of the loan, which are currently owned by Deutsche Bank National Trust Co. *1170 (“Deutsche Bank”). On December 21, 2007, • after three missed payments, Deutsche Bank filed a foreclosure action against the Vargases. A final foreclosure judgment was ultimately entered in Deutsche Bank’s favor, and the salé of the property was scheduled and then rescheduled twice at Deutsche Bank’s request.
In the interim, Deutsche Bank’s servicing agent, Ocwen Loan Servicing (“Ocwen”), forwarded a loan modification package to the Vargases, offering to modify the loan from its then balance of $230,596.06 to $267,939.14, and setting the monthly payments at $1,207.38. The proposal contained an acceptance date of October 24, 2008. The Vargases did not initially accept the offer, which would have substantially increased their balance, and instead, sought to compel a more reasonable forbearance agreement.
On January 29, 2009, the trial court denied the Vargases’ motion to compel a more reasonable offer and to stay the scheduled February 12, 2009, sale of the property. The Vargases claim that at this January 29, 2009, hearing, they accepted Deutsche Bank’s loan modification proposal and signed the agreement in open court. Although there is' no transcript of the hearing, it is undisputed that the Vargases tendered a payment of $1,207.38 at the hearing, the amount requested by Deutsche Bank, and that Deutsche Bank accepted the payment.
The following week, on February 5, 2009, an email from the Vargases’ counsel’s office to Ocwen reflects that the only pending issue was the start and expiration dates of the loan modification agreement. The following day, the Vargases’ counsel sent a letter to Ocwen, stating, in part, as follows:
The only matter remaining unsettled at that time was whether to apply Mr. and Mrs. Vargas’s payment to a new date of March 1st or immediately upon receipt. Your local counsel stated that she would have that answer for us that same afternoon. To this date, no such answer has been provided.
The Vargases sent a second payment to Ocwen which was returned with a letter stating the funds were insufficient to satisfy the reinstatement amount. The letter, however, did not state the amount that was necessary. In response, the Vargases’ counsel sent a letter to Ocwen’s president, explaining that Deutsche Bank’s local counsel agreed to the modification in open court before Judge Silverman, and, therefore, there appeared to be some sort of “miscommunication between your counsel, local counsel and your office as the second payment has been returned.” The Var-gases’ counsel further stated:
Therefore, enclosed please find the monthly payments for March (which was mistakenly returned) and April 2009 to be credited to my clients’ above referenced loan, as per the Agreement.... Should you wish to discuss this matter, please do not hesitate to contact my office at your earliest convenience.
These payments were accepted by Ocwen without any further communication.
After accepting the March and April payments, however, Ocwen inexplicably returned the May 2009 payment to the Var-gases. Thereafter, the Vargases’ counsel re-tendered the May 2009 payment and tendered the June 2009 payment. Ocwen returned both payments, stating that “they are not sufficient to satisfy the defaulted amount of your loan.” In response to these returned payments, the Vargases filed a “Motion to Enforce Loan Modification Agreement Entered Into In Open Court” (“Motion to Enforce”), asserting that at the January 29, 2009, hearing conducted before Judge Silverman, Deutsche Bank’s counsel agreed in “open court” to *1171 the terms of a loan modification agreement with the Vargases. However, after accepting several payments from the Vargases and sending the Vargases an account summary and a payment coupon stating that the Vargases payment of $1,207.38 was due on December 16, 2009, Deutsche Bank refused to accept further payments. The Vargases requested that the trial court order Deutsche Bank to comply with the agreement. Judge Silverman referred the Motion to Enforce to a general magistrate.
Despite these facts, which were considered at the hearing, the general magistrate issued her report and recommendation denying the Vargases’ Motion to Enforce, finding that “there is no evidence of a meeting of the minds upon an agreement to modify [the Vargases’] loan, either orally (under circumstances which require modification of the loan agreement in writing) or in writing.” Thereafter, the Var-gases filed exceptions to the report and recommendation, asserting that the general magistrate ignored evidence demonstrating that Deutsche Bank consummated the loan modification. Although Judge Sil-verman was familiar with the action, Judge David C. Miller heard, and later denied, the Vargases’ exceptions, and ratified the general magistrate’s report and recommendation. The Vargases’ appeal followed.
The Vargases contend the trial court erred by denying the exceptions and ratifying the general magistrate’s report and recommendation where the finding that there was “no meeting of the minds” is not supported by competent substantial evidence. I agree.
“Where a general [magistrate] has been appointed for fact-finding and to recommend disposition of pending issues, the trial court is bound by the general [magistrate’s] factual findings unless they are not supported by competent substantial evidence or are clearly erroneous.” Robinson v. Robinson, 928 So.2d 360, 362 (Fla. 3d DCA 2006) (quoting Garcia v. Garcia, 743 So.2d 1225, 1226 (Fla. 4th DCA 1999)); see also Ferraro v. Ferraro, 971 So.2d 826, 828 (Fla. 3d DCA 2007) (citing Robinson, 928 So.2d at 362); Cerase v. Dewhurst, 935 So.2d 575, 578 (Fla. 3d DCA 2006). The record reflects that the only witness who testified at the evidentiary hearing[9] before the general magistrate was Mr. Vargas, who testified that on January 29, 2009, he agreed to the loan modification terms presented by Deutsche Bank and tendered the payment to Deutsche Bank’s counsel in open court as requested. Additionally, it is undisputed that the Vargases signed the loan modification agreement prepared by Deutsche Bank and it was sent to Deutsche Bank for signature. It is also undisputed that the Vargases made the payments specified in the loan modification agreement timely each month and when Deutsche Bank began refusing the payments, they were deposited in the Var-gases’ counsel’s trust account. Deutsche Bank offered no witnesses, submitted no affidavits, and offered no evidence to refute the evidence submitted by Mr. Vargas; and the general magistrate found Mr. Vargas’ testimony to be credible.
I would, therefore, find that the general magistrate’s conclusion that there was no meeting of the minds to modify the loan was unsupported by competent substantial *1172 evidence. The only evidence presented was that the Vargases accepted and signed the loan modification agreement prepared by Deutsche Bank; the Vargases tendered the requisite payments timely; and the only unresolved question was whether the first payment tendered by the Vargases and accepted by Deutsche Bank was to apply to the February 2009 or March 2009 payment. Deutsche Bank therefore wrongfully rejected the Vargases’ payments, and the trial court erred in overruling the Vargases’ exceptions and ratifying the general magistrate’s report and recommendation.
The majority claims that the only evidence introduced at the hearing was Mr. Vargas’ testimony that “he” agreed to accept, and ultimately accepted, the October 2008 loan modification offer, and “[tjhere certainly is no evidence that Deutsche Bank or Ocwen” was still willing to modify the loan on January 29, 2009, at the terms offered three months earlier. The majority is incorrect. It is undisputed that Deutsche Bank accepted the Vargases’ check for $1,207.38, the amount it demanded at the January 29, 2009, hearing, which Mr. Vargas testified was the date the loan modification agreement was entered into. It is also undisputed that Deutsche Bank or Ocwen initially accepted further monthly payments by the Vargases in the modified amount, and that Ocwen sent the Vargases an account summary well after the claimed loan modification, and a payment coupon stating that the $1,207.38 payment (which is the modified monthly payment amount) was due on December 16, 2009. And, neither Ocwen nor Deutsche Bank offered any evidence disputing the Vargases’ claim that the loan modification was accepted by the Vargases and agreed to by counsel for Deutsche Bank in open court at the January 29, 2009, hearing. Importantly, local counsel, whom the Vargases and the Vargases’ counsel insist agreed to the loan modification on January 29, 2009, has never submitted an affidavit refuting their claim, and did not testify at the hearing. Thus, the Vargases’ claim remains unrefuted. The Vargases’ claim is also supported by the letters submitted at the hearing. The letters sent by the Vargases’ counsel demonstrate that following the hearing, the issue was no longer whether the parties would enter into a loan modification agreement, but rather whether the first payment the Vargases tendered and Deutsche Bank accepted at the January 29, 2009, hearing would be treated as payment for the month of February or March. If Deutsche Bank’s counsel had not agreed to the loan modification on January 29, 2009, then the communications would have reflected requests by the Vargases for a modification of the loan and Deutsche Bank’s position on the modification. Instead, the Vargases first payment was accepted, additional payments were initially accepted, and a statement and payment coupon were sent to the Vargases.
I also disagree with the majority’s decision to affirm on grounds not relied on by the trial court or argued on appeal — that the statute of frauds, section 687.0304(2), Florida Statutes (2012), requires that “an agreement to lend or forbear repayment of money ..., to otherwise extend credit, or to make any formal financial accommodation” must be in writing. Because this issue was not relied on below, nor argued on appeal, we are in no position to consider the merits of such an argument, especially since the loan modification offered by Deutsche Bank was in writing, and was accepted by and executed by the Vargases, and the posture of the proceedings was a motion by the Vargases to compel Deutsche Bank to execute the agreement it allegedly agreed to honor.
*1173 Accordingly, I would reverse the trial court’s order overruling the Vargases’ exceptions and ratifying the general magistrate’s report and recommendation, and remand for an evidentiary hearing to determine the intent of the parties as to the start date of the loan modification agreement. As the record demonstrates that the Vargases attempted to the make payments due under the loan modification agreement, but Deutsche Bank wrongfully rejected the payments, Deutsche Bank is not entitled to any late fees or penalties. I, therefore, dissent from the majority opinion concluding otherwise.

. We note that although Deutsche Bank claimed it was not aware that the two-hour specially set hearing before the general magistrate was to be an evidentiary hearing, it did not request a continuance or additional time to present any evidence, even though the general magistrate did not enter a ruling at the conclusion of the hearing, and instead, took the matter "under advisement.”